UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **JOSIAH DEES,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) ) Case No. 1:22-cv-00163-HAB-SLC |
| **ALVIN DAVIS,** *in his individual and official capacities*, *et al.*, | ) ) ) ) |
| **Defendants.** | ) ) |

## OPINION AND ORDER

Before the Court is a motion to compel filed by Plaintiff Josiah Dees on April 21, 2023 (ECF 19), seeking to compel Defendant Alvin Davis to fully respond to one interrogatory request. Davis filed a response to the motion on May 5, 2023 (ECF 20), to which Dees replied on May 10, 2023 (ECF 21). Thus, the motion is ripe for ruling. N.D. Ind. L.R. 7-1(d)(3). For the following reasons, Dees's motion to compel (ECF 19) will be GRANTED.

### I. PROCEDURAL AND FACTUAL BACKGROUND

On May 13, 2022, Dees filed this suit against Defendant City of Fort Wayne and Defendants Alvin Davis and Fritz Rommel, both officers with the Fort Wayne Police Department ("FWPD"), alleging multiple violations of his civil rights under the Fourth and Fourteenth Amendments of the United States Constitution. (ECF 1).[1] In relevant part, the complaint alleges that on June 15, 2020, Davis used excessive force against Dees when he pepper-sprayed Dees while Dees was speaking with multiple officers during a political protest ("pepper-spray incident"). (ECF 1 ¶¶ 7-9). The Court conducted a preliminary pretrial conference on July 14,

---

[1] This lawsuit is incident to an underlying criminal case.

2022, and issued a Scheduling Order setting July 13, 2023, as the close of discovery. (ECF 12, 13). Upon the parties' joint motion, the discovery deadline was later extended to October 11, 2023. (ECF 17, 18).

Dees served upon Davis his first set of interrogatories (ECF 19-7 at 1-2), including interrogatory no. 3 which requested the following:

> 3. State the name, job title(s), dates of employment, address, and telephone number of each person, known to Defendant, its attorneys, or other representatives, who has or claims to have any knowledge regarding the facts and circumstances surrounding the occurrence of the incidents referred to in Plaintiff's Complaint, including any Amended Complaints, Defendant's Answer, Defendant's Affirmative Defenses and/or Defendant's Answers to Plaintiff's Interrogatories and provide a description of Defendant's understanding of each such person's knowledge.

(ECF 19-2 at 4). Davis responded to the first set of interrogatories on October 17, 2022, responding to interrogatory no. 3 as follows:

> Defendants object to this interrogatory as being overly broad and unduly burdensome to produce the names of anyone who has or claims to have knowledge concerning the events in the pleadings. Further Defendants object to this interrogatory as seeking information protected by the attorney work product privilege. Without waiving the general or specific objections, Defendants direct Plaintiff to their Initial Disclosures.

(*Id.*; ECF 19-7 at 2). On January 30, 2023, Dees's counsel sent Davis's counsel a letter with an outline of his concerns about Davis's responses and a request for supplemental interrogatory responses by February 13, 2023. (ECF 19-1 ¶ 2; ECF 19-3; ECF 19-7 at 2). Among the concerns listed in the outline, Dees identified Davis's response to interrogatory no. 3 as nonresponsive. (ECF 19-3 at 5-6). On February 13, 2023, Davis's counsel responded by requesting to meet and confer in accordance with Federal Rule of Civil Procedure 37 and Local Rule 37-1, and by suggesting dates for a conference call. (ECF 19-4). Davis's counsel further expressed being "uncertain about the additional information [Dees] reference[d] in [his] letter" and what Dees was seeking. (*Id.* at 2). The parties held a telephonic conference on February 22, 2023, during

2

which they addressed the scope of the discovery sought by Dees. (ECF 19-1 ¶ 4). On March 3, 2023, Dees's counsel requested an update from Davis's counsel regarding Rule 37 issues that remained unresolved, including the response to interrogatory no. 3. (ECF 19-1 ¶ 5; ECF 19-5 at 1). After Davis failed to respond, Dees's counsel emailed Davis's counsel again on March 7, 2023, inquiring about the outstanding responses. (ECF 19-1 ¶ 6; ECF 19-5 at 1). The same day, Davis's counsel responded, listing the names of six police officers (the "six officers") present during the pepper-spray incident. (ECF 19-1 ¶ 7; ECF 19-5 at 2). Davis's counsel further identified the location of a hard drive, including a folder of the pepper-spray incident in which Dees could seemingly find a video capturing the pepper-spray incident from a civilian's mobile device, a video Davis believed to address Dees's interrogatory no. 3. (ECF 19-5 at 2).

On March 21, 2023, Dees's counsel responded to Davis's counsel by requesting that Davis amend his responses to the interrogatories to reflect the email update with the six officers' names and that he describe the conduct of those officers during the pepper-spray incident. (ECF 19-1 ¶ 8; ECF 19-5 at 4). Davis's counsel did not respond. On April 10, 2023, Dees's counsel sent another email requesting the same, insisting that he needed the information to identify which officers he wanted to depose. (ECF 19-1 ¶ 9; ECF 19-5 at 4). Dees's counsel sent a third email on April 12, 2023, indicating that if he received no response on or before noon of April 14, 2023, he would seek leave of court to compel the discovery responses. (ECF 19-1 ¶ 10; ECF 19-5 at 5). Davis's counsel responded on April 14, 2023, by sending Dees a supplemental discovery response to interrogatory no. 3, in which he listed the names of the six officers. (ECF 19-1 ¶ 11; ECF 19-5 at 5-6; *see* ECF 19-6). However, the supplemental discovery did not address Dees's request that Davis describe the conduct of the officers present during the pepper-spray incident— a point Dees's counsel raised to Davis's counsel in a reply email. (ECF 19-1 ¶ 11; ECF 19-5 at

3

6). Davis's counsel responded by stating that Dees should depose Davis and that requiring Davis's description of the officers' conduct in an interrogatory would be forcing "Davis to incur fees to summarize depositions already in [Dees's] possession from the criminal case and the extensive reports provided" to Dees. (ECF 19-1 ¶ 13; ECF 19-5 at 6-7). Davis's counsel further asserted that Dees was making counsel "guess as to what responses [Dees] think will be sufficient from the individual defendant." (ECF 19-5 at 7; *see also* ECF 19-1 ¶ 13). Still on April 17, 2023, Dees's counsel emailed Davis's counsel back, stressing that deposing Davis would be "significantly more expensive" than an answer on the interrogatory, stating that the depositions and reports did not outline "what each of [the] officers was doing [during the pepper-spray incident] or why they are listed as having pertinent information," and summarizing his discovery request to (1) the names of the three officers ("three officers") identified on a screenshot photo attached to the email ("photograph") and (2) Davis's "recollection of what the officers were discussing with Dees and the other individuals before he deployed his pepper spray." (ECF 19-5 at 7-8; *see also* ECF 19-1 ¶ 14). Dees's counsel, again, provided until April 18, 2023, for Davis to update his interrogatory response, after which Dees would raise the discovery dispute with the Court. (ECF 19-1 ¶ 14; ECF 19-5 at 7). Davis's counsel never responded.

On April 21, 2023, Dees filed the motion to compel (ECF 19) and a certification detailing his attorney's attempts to confer in good faith with opposing counsel (ECF 19-1). As stated above, the motion is now ripe for ruling. (ECF 20, 21).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." "[R]elevance is to be construed broadly."

4

*Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Sherwood v. Creative Hairdressers, Inc.*, No. 2:11-cv 291, 2012 WL 1563910, at *1 (N.D. Ind. May 1, 2012) (citation and internal quotation marks omitted).

Otherwise relevant discovery may be subject to the exceptions laid out in Rule 26(b)(2)(C), which states:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*See E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 433 (S.D. Ind. 2010).

If a party fails to respond to interrogatories or requests for production of documents, the requesting party may move to compel discovery under Federal Rule of Civil Procedure 37. *See Redmond v. Leatherwood*, No. 06-C-1242, 2009 WL 212974, at *1 (E.D. Wis. Jan. 29, 2009). Together with the motion to compel, a party must file "a separate certification that the party has conferred in good faith or attempted to confer with other affected parties in an effort to resolve the matter raised in the motion without court action." N.D. Ind. L.R. 37-1(a); *see* Fed. R. Civ. P. 37(a)(1). "A motion to compel discovery pursuant to Rule 37(a) is addressed to the sound discretion of the trial court." *Redmond*, 2009 WL 212974, at *1 (citation omitted).

### III. DISCUSSION

Based on a review of counsel's various email exchanges, Dees has adequately attempted to confer with Davis in good faith to resolve this matter without Court intervention. (*See* ECF 19-1; ECF 19-3 to 19-5); Fed. R. Civ. P. 37(a)(1); N.D. Ind. L.R. 37-1(a). Therefore, at issue is whether Davis should provide a description of the conduct of the six officers identified in his March 7, 2023, email (ECF 19-5 at 2, 4) and the identification of the three officers present in the area Dees was pepper-sprayed, as captured in a photograph provided by Dees (ECF 19-5 at 7-8).[2]

*A. Wording of interrogatory no. 3*

As an initial matter, the Court notes that interrogatory no. 3 does not explicitly request a description of the officers' conduct. That said, during the parties' attempt to confer in good faith and in various emails, Dees clarified that the missing information concerned "the actions taken by each of the officers" present when Davis was pepper-sprayed. (*Id.* at 4, 6; ECF 20 at 5).

Dees attempted to clarify his discovery request at the Rule 37.2 conference and thereafter, and Davis obtained clarification through subsequent communications. *See Chamberlain Grp. v. Lear Corp.*, No. 05C3449, 2010 WL 2836975, at *1 (N.D. Ill. July 15, 2010) ("The purpose of [Rule 37.2] is '[t]o curtail undue delay and expense in the administration of justice.'" (second alteration in original) (citing Fed. R. Civ. P. 37.2)); *Ty, Inc. v. Target Corp.*, No. 18 C 2354, 2021 WL 1885987, at *6 (N.D. Ill. May 11, 2021) (emphasizing that it is the requesting party's role to "redraft the versions of documents requests" so that the party "can get

---

[2] While Davis provided the names of six officers who were present in the general area where Davis was pepper-sprayed (ECF 19-5 at 2; ECF 19-6 at 2), it is not clear that those officers are the same as those in the photograph Dees sent to Davis (ECF 19-5 at 8). Therefore, the Court will analyze whether Davis should supplement his interrogatory response with the names of the three officers identified in the photograph as well.

what it now says it should have asked for in the first place"); *cf Heller v. City of Dallas*, 303 F.R.D. 466, 492 (N.D. Tex. 2014) ("[I]f a party believes that the discovery request is vague, that party [should] attempt to obtain clarification prior to objecting on this ground." (second alteration in original)). Additionally, Davis abandoned his objections when he failed to raise them in his response. Accordingly, although interrogatory no. 3 may have been vague in part when initially posed, the Court will construe interrogatory no. 3 as requesting a description of the actions taken by each of the six officers present when Davis pepper-sprayed Dees for purposes of avoiding undue delay and expense in the administration of justice. The Court will further order Dees to amend interrogatory no. 3 accordingly.

*B. Description of the six officers' conduct during the pepper-spray incident*

Dees first seeks a description of the conduct of the six officers identified by Davis in his March 7, 2023, email. Dees argues that the information requested is well within the scope of discoverable materials, and that this information cannot be found in the discovery provided. (ECF 19-7 at 5). Davis opposes the disclosure because "[w]hat [he] saw or didn't see [the officers] do, or his speculation as to their actions is not dispositive as to whether Officer Davis violated [Dees's] civil rights." (ECF 20 at 5). In the same breath, Davis asserts that he has "essentially complied with [Dees's] request for information by identifying the other sources" from which Davis's recollection of the officers' conduct can be elicited, and that such sources are more precise and efficient. (*Id.* at 5-6). Specifically, he argues that the information sought is available on a video and police reports (collectively, business records) and a deposition taken in a related criminal case. (*Id.*).[3]

---

[3] Of note, the proffered reasons Davis provides in his brief for refusing to supplement the interrogatory differ from the ones given in his response to Dees's interrogatory. In his interrogatory response, Davis objected to interrogatory no. 3 as overly broad and unduly burdensome, and on the ground that the information sought was protected by the attorney work-product privilege. (ECF 19-2 at 4; ECF 19-6 at 2). Because Davis has not made those arguments in

7

1. <u>Relevance</u>

Davis's first argument can be addressed swiftly. Rule 26(b)(1) does not require that the information be "dispositive" of the action for it to fall within the permissible scope of discovery. Rather, the rule limits discoverable information to what is relevant. Fed. R. Civ. P. 26(b)(1). "Relevance, for discovery purposes, is now gauged in relation to claims or defenses in the action." *Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020). "[B]ecause the purpose of discovery is to help define and clarify the issues, relevance is to be construed broadly." *Id.* (citation and internal quotation marks omitted). Thus, when "relevance is in doubt, courts should err on the side of permissive discovery." *Loyola Univ. Chi.*, 2020 WL 406771, at *2. "Relevance, though, is not the end of the inquiry under Rule 26." *Id.* Indeed, discovery must also be:

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Here, Dees seeks a description of the conduct of the officers present during the pepper-spray incident to determine whether Dees would need to depose them. (ECF 19-5 at 4, 7; ECF 19-7 at 5). Such decision could, in turn, "help define and clarify the issues." *See Coleman*, 2020 WL 5752149, at *3. A description of the officers' conduct is thus relevant to the action, and as such, it squarely falls under the "broad" scope of permissible discovery—whether such

---

his response to Dees's motion, the Court will not consider them here. *See Sherwood*, 2012 WL 1563910, at *1 ("The objecting party must show with specificity that the request is improper. That burden cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." (citations and internal quotation marks omitted) (collecting cases)).

information would be dispositive of the complaint's allegations or not. *Coleman*, 2020 WL 5752149, at *3.[4] Additionally, nothing indicates—and Davis does not argue—that answering Dees's interrogatory would not be proportionate to the needs of the case.

2. Exception under Rule 26(b)(2)(C)(i)

In the alternative, Davis seems to invoke the exception in Rule 26(b)(2)(C)(i), namely, that the discovery sought, though relevant, is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. He points to three alternative sources from which Dees can obtain the requested discovery: first, "documents produced and maintained by the FWPD in their regular course of business," which include police reports and a video of the pepper-spray incident taken by a civilian, and second, depositions taken in a related criminal case. (ECF 20 at 5-6; *see* ECF 19-5 at 2).[5] Davis's attempt to invoke Rule 26(b)(2)(C)(i), however, is unavailing.

---

[4] Davis's argument also fails on separate grounds. He contends that his "speculation as to [the officers'] actions is not dispositive as to whether [he] violated [Dees's] civil rights." (ECF 20 at 5). It is true that a reading of interrogatory no. 3 may call for Davis's speculation of the officers' knowledge. (*See* ECF 19-2 at 4 ("provide a description of Defendant's understanding of each such person's knowledge."); ECF 19-6 at 2 (same)). At any rate, Dees's counsel clarified the interrogatory in his January 30, 2023, letter, stating that the "interrogatory specifically asks for Davis's own personal knowledge of each person that could have knowledge relating to the claims," and that Davis provide a "general description as to [the officers'] involvement and/or knowledge." (ECF 19-3 at 6). Several times thereafter, Dees insisted that Davis's interrogatory response was specifically lacking as to the description of the officers' conduct. (ECF 19-5 at 4 ("have him describe the actions taken by each of the officers. . . ."); *id.* at 7 (stating that the discovery does not "outline what each of [the] officers was doing on the date in question or why they are listed as having pertinent information. We are entitled to know what Davis recalls of these officers' involvement at the scene . . . . [W]e want to know . . . what the officers were discussing with Dees and the other individuals before he deployed his pepper spray.")). Therefore, it is clear that Dees is not asking Davis to speculate about the officers' knowledge or actions. *See supra* Part III.A. If Davis is unaware of the officers' conduct, nothing prevents him from saying so in his interrogatory response. *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, No. 18 C 0825, 2020 WL 1701861, at *10 (N.D. Ill. Apr. 8, 2020) ("If [Defendant] does not have enough information in its knowledge or control to fully respond to this interrogatory, it should explicitly say so in its supplemental interrogatory response.").

[5] Although Davis directed Dees to the initial disclosures in his interrogatory response, he no longer argues that the sought information can be found there. (*See* ECF 19-2 at 4; ECF 19-6 at 2). Therefore, the Court will not consider whether the initial disclosures are proper alternative sources of information that are "more convenient, less burdensome, or less expensive." *See Simply Storage Mgmt., LLC*, 270 F.R.D. at 433. At the same time, in his response to the motion to compel, Davis does identify a third source of information: a new deposition of Davis. (ECF 20 at 5-6). This argument will be analyzed separately below.

First, Davis's reference to other sources—without more—renders his interrogatory response incomplete. "An interrogatory response generally should be complete in and of itself and stand on its own." *Beijing Choice Elec. Tech. Co.*, 2020 WL 1701861, at *6 (citation omitted). "That means the response should not refer to pleadings, depositions, other documents, or other interrogatories, especially when such references make it impracticable to determine whether an adequate answer has been given without a cross-checking comparison of answers." *Id.* (alteration omitted) (citation, internal quotations marks, and footnote omitted). Parties are "entitled to discover the factual basis for [their] claims through the use of interrogatories, without being referred to . . . other discovery materials." *Id.* (quotation omitted). That said, "[i]f [a responding party] relies upon [a business record under] Rule 33(d) for any interrogatory supplementation . . ., [he] must identify the documents or portions of documents at issue specifically enough so that [the requesting party] is able to locate the answers just as easily as" him. *Id.* at *7 (citations and internal quotation marks omitted). "Reliance upon Fed. R. Civ. P. 33(d) requires, at a minimum, identification of specific pages, by Bates number, from which the interrogating party can locate and identify the responsive information as readily as the responding party could." *Est. of Daniels v. City of Indianapolis*, No. 1:20-cv-02280-JRS-MJD, 2021 WL 4844145, at *14 n.8 (S.D. Ind. Oct. 18, 2021).

Davis fails to sufficiently identify the alternative sources of information. He first points to a "control" number (Report Number 20F61260) as a business record under Rule 33(d), which contains "Davis's understanding of [the officers' knowledge of the pepper-spray incident]." (ECF 19-5 at 2; ECF 19-6 at 3; *see also* ECF 20 at 5 (describing the police reports as "documents

produced and maintained by the FWPD in their regular course of business")).[6] That "control" number, in turn, contains an electronic folder in which Dees can allegedly find information on the "dispersal of [pepper] spray." (ECF 19-5 at 2). Yet the folder and the control number both contain several items. For instance, the electronic folder contains over forty pages of police reports (ECF 21-1), and the "control" number contains several videos and photographs unrelated to the pepper-spray incident (ECF 21 at 3-4). Apart from the video captured by the civilian which Davis specifically identified as responsive to Dees's request, it is unclear which of the other items answer the interrogatory, as Davis does not "identify the documents or portions of documents at issue specifically enough so that [Dees] is able to locate the answers just as easily as [Davis]." *See Beijing Choice Elec. Tech. Co.*, 2020 WL 1701861, at *7 (citations and internal quotation marks omitted). Davis also fails to identify the responsive police reports by Bates page number. *See City of Indianapolis*, 2021 WL 4844145, at *14 n.8. And even if Davis did identify the responsive documents, he should do so in a manner that obviates the need to perform "a cross-checking comparison of answers." *See Beijing Choice Elec. Tech. Co.*, 2020 WL 1701861, at *6. He unarguably fails to do so here.

      Davis's argument that the requested information can also be found in depositions fares no better. He merely cites to depositions "of the individual defendants named here and additional FWPD officers" which were "taken in the criminal case." (ECF 20 at 2, 5). Davis does not identify whose deposition and where in those depositions the requested information could be found. In fact, the lack of specificity is reflected in Davis's assertion that the information was "likely" discussed in those depositions. (*Id.* at 5). For the same reasons stated above, Davis

---

[6] Courts have found police reports to be admissible evidence as business records under the Rules of Evidence. *Latosky v. Strunc*, No. 08-C-771, 2009 WL 1073680, at *4 (E.D. Wis. Apr. 21, 2009); *Minett v. Overwachter*, 433 F. Supp. 3d 1084, 1087 (W.D. Wis. 2020).

cannot point to the depositions as an alternative source of information, in the abstract, to fulfill the requirement that he provide a response that is "complete in and of itself and stand on its own." *Beijing Choice Elec. Tech. Co.*, 2020 WL 1701861, at *6.

In essence, by referring Dees to the "documents maintained and produced by the FWPD" and to the depositions taken in the criminal case without more specificity, Davis has made it "impracticable to determine whether an adequate answer has been given," with or without a "cross-comparison of answers." *See id.* In any event, as stated, Dees is entitled to an answer without having to parse through "extensive" records—as Davis's counsel puts it—which contain a haystack of irrelevant information. (*See* ECF 21 at 3-4). To ask such effort of Dees certainly cannot be characterized as "more convenient, less burdensome, or less expensive" than answering the interrogatory. S*ee Simply Storage Mgmt., LLC*, 270 F.R.D. at 433.

Davis's arguments are unpersuasive for a second reason. Besides failing to identify the other sources of information with specificity, the source he does identify with specificity does not contain a full description of the conduct of the six officers at the time Dees was pepper-sprayed. The only source of information specifically identified by Davis is a video recorded by a civilian, which depicts the pepper-spray incident. (ECF 19-5 at 2).[7] However, Dees's search for the description of the officers in the video proved unfruitful—and understandably so. (*See* ECF 21 at 3). The video procured by the FWPD from the civilian does not have audio, and therefore does not "address the conversation being had prior to Davis shooting pepper spray into three unarmed people's faces." (*Id.*). As part of the description of the officers' conduct, it is reasonable for Dees to expect a description of the officers' conversation, which he specifically inquired

---

[7] There are also other videos which were not identified by Davis, but which were stored in the same control number as the allegedly responsive video. Those videos do not provide a description of the officers' conduct. (ECF 21 at 3 ("The videos in question do not identify the officers or depict the conversation being had with Josiah Dees before Davis decides to pepper spray him.")).

about during his exchange with Davis's counsel. (ECF 19-5 at 7 ("[W]e want to know . . . what the officers were discussing with Dees and the other individuals before he deployed his pepper spray.")). A video without sound cannot be responsive of such request. Therefore, Davis's efforts to establish the interrogatory as less convenient, more burdensome and more expensive than the depositions are unpersuasive, and, again, he will be responsible for supplementing his interrogatory response by providing discovery on the information sought.[8]

3. Deposing Davis

Beyond arguing that the information can be found in existing sources of discovery, Davis further asserts that conducting a new deposition of Davis would be more convenient, less burdensome, and less expensive. This argument, too, is unconvincing. While interrogatories are an "inexpensive, convenient method of discovery," *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002), depositions can be burdensome and expensive, *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 868 (7th Cir. 2019) (stating that "it generally makes sense not to take a witness's deposition until [lawyers] have the relevant documents in hand" because "[d]epositions are expensive"). Here, "[t]here is no indication . . . that the information sought by [Dees] would be obtained more efficiently by deposition than by interrogatories." *Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202, Cook Cnty., Ill. v. Admiral Heating & Ventilating, Inc.*,

---

[8] Davis also refuses to disclose the requested information because the officers were not named as defendants and because he is not their supervisor. (ECF 20 at 5). Having determined that (1) the information requested is relevant to the action under Rule 26(b), and (2) the exception under Rule 26(b)(2)(C)(i) does not apply, it is unclear to the Court how those two facts bear significance on whether Davis should describe the officers' conduct during the pepper-spray incident. Indeed, Davis presumably has personal knowledge of the other officers' conduct. *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97 C 5696, 1999 WL 300231, at *1-3 (N.D. Ill. May 3, 1999) (granting motion to compel where the deponent "plainly ha[d] information that [was] discoverable under Rule 26(b)(1)," had not persuaded the court that the requested discovery would be duplicative or unduly burdensome, and had not offered a sworn affidavit to support his assertion that he lacked relevant knowledge). He was physically present at the scene with the other officers—many of which were also FWPD officers—and he does not deny observing the events that led to Dees being pepper-sprayed. Therefore, this "throw everything against the wall and see what sticks" argument does not bolster Davis's position in any way.

104 F.R.D. 23, 31 (N.D. Ill. 1984). Indeed, Dees argues that as a matter of litigation strategy, he seeks the requested information in an interrogatory (1) to determine which officer to depose, and (2) possibly depose those officers before Davis—if he chooses to depose Davis at all. This militates against a conclusion that a new deposition of Davis would be more convenient, less burdensome, or less expensive. *Cf. Duncan v. Paragon Publ'g, Inc.*, 204 F.R.D. 127, 129 (S.D. Ind. 2001) (concluding that the interrogatory requests were cumulative given the requesting party's intention to depose the witness from whom the interrogatory responses were sought).

Even assuming Dees will depose Davis, "[i]t is long standing and well-settled that methods of discovery are complementary, rather than alternative or exclusive." *Beijing Choice Elec. Tech. Co.*, 2020 WL 1701861, at *6 (citation omitted). Further, "[t]hat answering interrogatories would be burdensome and expensive . . . is not in itself a reason for refusing to order discovery which is otherwise appropriate." *Bd. of Educ. of Evanston Twp., Ill.*, 104 F.R.D. at 29 (citation and internal quotation marks omitted). Providing information by interrogatories "may effect judicial economy and economic savings to the parties," because the requesting party "will know whom they have to depose; unnecessary depositions may be avoided . . . ; important conversations, communications and documents will be highlighted; delay may be avoided; and the issues for trial may be narrowed." *Id.* at 31 (quotation omitted). Davis does not make a compelling case for departing from this principle.

In conclusion, Davis cannot claim that the information sought appears in other sources because he fails to specifically identify where the information can be found and because he fails to establish that taking a deposition of Davis anew would be more convenient, less burdensome, or less expensive under Rule 26(b)(2)(C)(i). On the contrary, Davis can directly account for what took place at the scene given his own presence during the pepper-spray incident. Because he

14

does not make the showing necessary to avoid answering interrogatory no. 3 with a description of the six officers' conduct, he will be directed to fully answer this portion of the interrogatory.

### C. Names of the three officers in the photograph

Next, Dees seeks the identification of three officers who appear in a photograph captured before the pepper-spray incident. He argues that he does not know which officers were present in the photograph as their identification cannot be found in Davis's deposition or elsewhere (ECF 21 at 1), but that Davis has stated during his deposition in the criminal case that he recognized two of the three officers (*id*. at 4-5). Davis, in turn, opposes the disclosure of the three officers' names because he is not their supervisor and because they have not been sued here. (ECF 20 at 5-6).[9]

To begin, Davis's argument is irrelevant if the information requested is available to him. In other words, Davis "must respond to the interrogatory fully and completely, supplying all information within [his] knowledge, possession, or control, including information available through [his] attorneys, investigators, agents, or representatives, and any information obtainable by [him] through reasonable inquiry." *Smith v. Howe Mil. Sch.*, No. 3:96-CV-790RM, 1998 WL 175875, at *2 (N.D. Ind. Feb. 27, 1998). Here, Davis does not indicate that he is not in control of the information or that he could not obtain it through reasonable inquiry. On the contrary, there are indicia suggesting that Davis has or could have access to the information requested.

Of note, Davis and the City are represented by the same attorneys, and the City would seemingly be in possession of the requested information if the three officers were affiliated with

---

[9] It is unclear if Davis is arguing that this information can be found in other discovery sources. But if so, for the same reasons stated above, he does not identify with enough specificity where this information could be found, and thus, any argument suggesting that this information would be unreasonably cumulative or duplicative, or could be obtained from some other source that is more convenient, less burdensome, or less expensive, would be unconvincing.

the City. (*See* ECF 19-4 at 1 (stating that the discovery requests "seek information in the possession of the City."); *see* ECF 19-5 at 2 (identifying five out of the six police officers as "Fort Wayne Police" officers)). Additionally, in that same email to Dees's counsel, Davis's counsel stated "work[ing] with the FWPD" and other parties to respond to Dees's discovery request because Davis did not possess the information sought. (ECF 19-4 at 1). Thus, at the very least, it appears Davis could obtain the requested information through reasonable inquiry, including information available through his counsel.

If Davis cannot obtain the information through reasonable inquiry, and if he "does not have enough information in [his] knowledge or control to fully respond to this interrogatory, [he] should explicitly say so in [a] supplemental interrogatory response." *Beijing Choice Elec. Tech. Co.*, 2020 WL 1701861, at *10; *Howe Mil. Sch.*, 1998 WL 175875, at *2 ("If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information." (quotation omitted)). But here, Davis has not made a case that the information sought is unavailable to him or that he should not provide it to Dees, and thus, he must revise his interrogatory response accordingly.

Further, any refusal to supplement the interrogatory response with the names of the three officers would contradict the basic discovery rule of Rule 26. As stated previously, Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). The names of these three officers are certainly relevant to Dees's claims and proportional to the needs of the case. Indeed, Rule 26(a) requires Davis to identify "the name and, if known, the address and telephone number of each individual likely to have discoverable

16

information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses," if he identifies any person as likely to have information in his initial disclosures. Fed. R. Civ. P. 26(a). Davis's interrogatory response suggests that he has identified the officers present in the area where Dees was pepper-sprayed in his initial disclosures, thus triggering his obligation to provide their names under Rule 26(a). (*See* ECF 19-2 at 4; ECF 19-6 at 2). Additionally, the three officers appearing in the photograph all potentially witnessed the pepper-spray incident and are likely to have information relevant to Dees's claims, thus requiring Davis to identify them under Rule 26(b). There is therefore no question that the identity of the three officers is discoverable information, and that Davis should be responsible for providing it to Dees.

In sum, Davis must disclose the names of the three officers identified in the photograph sent by Dees. If he does not know this information *and* if he has attempted to acquire this information through reasonably inquiry, Davis should state so in his interrogatory response, along with an account of his efforts to obtain the information.

## IV. CONCLUSION

Accordingly, Dees's motion to compel (ECF 19) is GRANTED. Dees is ORDERED to amend interrogatory no. 3, as outlined in this Opinion and Order, and serve it to Defendant Davis on or before August 22, 2023. Defendant Davis is ORDERED to fully respond to Dees's outstanding interrogatory no. 3 as outlined in this Opinion and Order, on or before August 29, 2023.

SO ORDERED. Entered this 15th day of August 2023.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge