UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JOSIAH DEES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:22-CV-163-HAB |
| | ) | |
| ALVIN DAVIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

In the summer of 2020, Fort Wayne, Indiana, like other American cities, saw protests in response to the murder of George Floyd. Plaintiff Josiah Dees ("Dees") took part in those protests. And he did so, as shown by two guilty pleas, in violation of Indiana law. Even so, Dees has sued Fort Wayne Police Officer Alvin Davis ("Davis") for excessive force, Fort Wayne Police Officer Fritz Rommel ("Rommel") for false arrest, and the City of Fort Wayne ("City") under *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).[1]

Now before the Court is Defendants' motion for summary judgment. (ECF No. 23). That motion is now fully briefed (ECF Nos. 24, 51, 50, 55) and ready for ruling.[2][3]

---

[1] Plaintiff also sued the City under a theory of *respondeat superior* liability. (ECF No. 1 at 8). He now concedes, correctly, that such a theory is unavailable. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

[2] Defendants have also moved to strike portions of Plaintiff's statement of facts (ECF No. 50 at 3-4). Defendants appear to base their motion on Federal Rule of Civil Procedure 56(c)(2), which states that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Because the Court can distinguish which exhibits, affidavits, and statements may properly be considered when deciding whether summary judgment is appropriate, the Court denies Defendants' motion to strike. The Court has noted the Defendants' objections and will consider the objections when they arise in the Court's summary judgment analysis.

[3] Defendants, after Plaintiff's summary judgment response was filed, moved to supplement their statement of material facts. (ECF No. 47). While the Court would prefer all facts to be designated at once, the Court does not believe that Plaintiff would be prejudiced by the late designation. The Local Rules of this Court expressly contemplate a moving party citing evidence in opposition to a non-moving party's statement of additional material facts. *See* N.D. Ind. L.R. 56-1(c)(2)(C). And Plaintiff was given the right to, and did, file a sur-reply (ECF No. 55), eliminating any prejudice. *Dr. Robert L. Meindres, D.C., Ltd. v. United Healthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015). The motion for leave to supplement is, therefore, GRANTED.

I.  **Factual Background**

Dees was one of many individuals that took to the streets of downtown Fort Wayne in May and June 2020. On May 29 and June 14, he illegally obstructed traffic, which were misdemeanor offenses. He pleaded guilty to both.

A.  *June 15, 2020*

On June 15, Dees was again taking part in a protest in downtown Fort Wayne. Dees observed officers chasing after Courtney Willis ("Willis"), a person Dees knew to suffer from a heart issue. Dees and two other individuals followed the officers, "quickly at first," to ask that Willis not be tased because of the heart condition. The three slowed as they came to the location where Willis was being arrested. They were blocked from proceeding by Officer Kylen Hill ("Hill"), who had placed his police bicycle across the sidewalk. The parties more or less agree on the facts up to this point.

From here, however, the parties' versions differ significantly. Davis states that he and other officers gave loud verbal commands for Dees and his companions to back up. The three did not back up, and one tried to push forward through the bike. This made Davis feel "threatened and nervous," particularly given the surrounding circumstances of the protests. Davis "deployed his personal OC spray," or pepper spray, causing Dees and his companions to retreat.

Dees tells a different story. Dees states that he and his companions were told to stop, and they did so, short of the bike. This left Dees standing in front of the bike, arms at his side, opposite Hill. Dees states that he was not yelling, cursing, or otherwise threatening the officers. Dees denies touching or trying to push forward through the bike. While Dees was standing there, Davis came up and, without warning, sprayed Dees and his companions with pepper spray. Dees denies that

he was told to back up until Davis was already using the pepper spray.[4] Dees retreated in pain and remained in pain for at least the next day.

The next day, Officer Mark Gerardot ("Garardot") was instructed to find and arrest Dees. Gerardot was advised that the arrest was due to Dees actions on May 29 and June 14. That same day, Gerardot located Dees in a vehicle driven by another individual. After an "extended process . . . involving multiple officers and vehicles," Dees was taken into custody.

**B.**    *Probable Cause Affidavits*

Following the protests, the Fort Wayne Police Department set about reviewing film of the events to determine whether criminal laws had been broken. Sgt. Mark Brooks ("Brooks") supervised this effort. After reviewing tapes from May 29 and June 14, and after Dees was arrested, Brooks and Rommel drafted probable cause affidavits alleging that Dees violated Ind. Code § 35-44.1-2-16 by obstructing traffic.

Brooks also reviewed video of the June 15 incident detailed above. From that review, Brooks drafted a probable cause affidavit and submitted it to the prosecutor. But Brooks failed to sign the affidavit, so someone, either the prosecutor or the trial court, contacted Rommel. Rommel then signed the affidavit and submitted it after Dees' arrest. The problem was that Rommel did not change the first-person narrative drafted by Brooks. So the affidavit as submitted represented, under oath, that Rommel had first-hand knowledge of things that, in fact, he did not. Instead, Brooks had the first-hand knowledge. All charges related to the June 15 incident were ultimately dismissed.

---

[4] Plaintiff primarily relies on footage taken by a local news station as evidence for his version of the facts. The Court finds this eleven-second video to be ambiguous at best. It shows nothing of the events leading up to Dees being pepper-sprayed and is so zoomed-in on the action that it provides little by way of context.

C.  ***FWPD Use-of-Force Policy***

The Fort Wayne Police Department uses a use-of-force continuum to determine what use of force is reasonable in any one circumstance. The continuum matches levels of resistance by a suspect to levels of force by an officer, with officers being permitted to use one level of force more than the level of resistance being used. The policy defines the use of pepper spray as "soft empty-hand control." This means that pepper spray is authorized in response to "anything that the officer would encounter that . . . could be defined as resistance," including "pre-assault cues" (such as verbal threats, a fighting stance, or balled fists) as well as verbal non-compliance and passive resistance. But if someone is not showing pre-assault cues, not threatening anyone, and not committing a crime, pepper spray is not to be used.

II. **Legal Analysis**

A.  ***Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.**     ***Davis is not Entitled to Summary Judgment on Plaintiff's Excessive Force Claim***

Qualified immunity[5] shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). District courts have discretion to decide which of the two prongs of the qualified immunity analysis to tackle first. *Person v. Callahan*, 555 U.S. 223, 236 (2009).

The Court recognizes that the parties' versions of events do not line up perfectly, particularly about Plaintiff's role in the confrontation. Still, the mere existence of disputed facts is not enough to defeat summary judgment. Instead, for Plaintiff to prevail, the disputed facts must be material to the question of qualified immunity. *Hernandez v. Cook Cty. Sheriff's Off.*, 634 F.3d 906, 916 (7th Cir. 2011). Viewed in a light most favorable to Dees, the Court finds that Davis violated a clearly established constitutional right when he deployed his pepper spray on June 15.

---

[5] Plaintiff alleges violations of both the Fourth and Fourteenth Amendments. Distinguishing between the two is not critical for the qualified immunity decision. Indeed, the Seventh Circuit has explained that it made "no difference that our circuit caselaw situated the constitutional violation in the Due Process Clause rather than the Fourth Amendment." *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019).

Two recent decisions from the Supreme Court of the United States have clarified what it means for a right to be "clearly established." *See City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9 (2021); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021). Both cases emphasize that clearly established law cannot be defined "at too high a level of generality." *Bond*, 595 U.S. at 12. "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. (internal quotations omitted).[6]

Fourth Amendment cases call for particular specificity, as it is "sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Id*. at 11–12. Thus, to show a violation of clearly established law, Plaintiff must identify a case that put Defendants on notice that their specific conduct was unlawful. *Cortesluna*, 595 U.S. at 7.

None of the cases offered by Dees meet the standard of specificity required to demonstrate a clearly established right. His first two cases, *Chelios v. Heavener*, 520 F.3d 678 (7th Cir. 2008), and *Morphin v. City of E. Chicago*, 349 F.3d 989 (7th Cir. 2003), do not address the use of pepper spray. They could not, then, have told Davis that his specific conduct was unlawful. *Graham v. Hildebrand*, 203 Fed. App'x. 726 (7th Cir. 2006), probably does tell Davis that his conduct was unlawful, at least under Dees' facts, but it is unpublished. Unpublished circuit court decisions cannot clearly establish the law because "they are not authoritative as precedent and therefore do not establish the duties of nonparties." *Mitchell v. City of Decatur*, 528 F. Supp. 3d 904, 925 (C.D.

---

[6] There is some suggestion in *Cortesluna* that the case must come from the Supreme Court of the United States. *Cortesluna*, 595 U.S. at 6 ("Even assuming that Circuit precedent can clearly establish law for purposes of § 1983 . . . .").

Ill. 2021) (citing *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995)). Based on Dees' filings alone, he has failed to carry his burden.

But not all is lost for Dees. Even if the Court assumes that Dees has engaged in an exhaustive search of Seventh Circuit case law and has come up empty, "the court may broaden its survey to include all relevant case law in order to determine whether there was such a clear trend in the case law that the court can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Mitchell*, 528 F. Supp. 3d at 925 (citing *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018)). The Court finds such a trend here.

The Court starts with *Hildebrand*. There, the Seventh Circuit noted that "other circuits have found an officer's use of pepper spray reasonable when the individual sprayed was either resisting arrest or refusing reasonable police requests." *Hildebrand*, 203 Fed. App'x. at 731. The Court of Appeals then cited cases from the Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits, all standing for that proposition. *Id*. (collecting cases). Collectively, those cases stand for a three-decade trend in circuit court case law limiting the use of pepper spray to suspects who were resisting arrest or refusing reasonable police requests.

One of the cases cited by the Seventh Circuit is particularly relevant. In *Headwaters Forest Defense v. Cnty. of Humboldt*, 276 F.3d 1125 (9th Cir. 2002), police officers used pepper spray against protestors three times. In the first, seven protestors staged a sit-in protest at a logging company to prevent logging of ancient redwood trees. Officers told the protestors that pepper spray would be used if they did not leave. Four refused, and pepper spray was twice applied via Q-Tip to their eyes. Officers were ultimately able to remove the four remaining protestors by carrying them out of the building.

During a second protest, four protestors again refused to leave the property of the logging company. Again, officers warned the protestors that they would be pepper sprayed if they did not leave. Two refused. Pepper spray was again applied, once via Q-Tip and once via short bursts. Again, officers extracted the protestors despite their refusal to surrender.

During a third protest, four protestors refused to leave a Congressman's office. Again, officers warned the protestors that pepper spray would be used if they didn't leave. The protestors refused, and pepper spray was applied via Q-Tip. This caused two of the protestors to surrender. Officers applied bursts of pepper spray to the remaining two protestors, causing each to surrender.

Reversing the entry of summary judgment on qualified immunity grounds, the Ninth Circuit found that officers violated a clearly established right when they used pepper spray against the protestors. The court noted that, accepting the facts in a light most favorable to the protestors: "the protestors were sitting peacefully, were easily moved by the police, and did not threaten or harm the officers. In sum, it would be clear to a reasonable officer that it was excessive to use pepper spray against the nonviolent protestors under these circumstances." *Id*. at 1130.

*Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009), presents another relevant example. There, a man was kicked out of a bar following a fight. He approached two officers to tell them he had just been attacked. As he explained the situation, he repeatedly reached for his injured head. Each time the man reached for his head, the defendant police officer interrupted him and told him to put his hands down. This aggravated the man, who started to walk away. As the man walked away, the officer discharged his pepper spray. This caused the man to flee. Upon catching the man, the officer again discharged his pepper spray directly into the man's face.

Affirming the denial of summary judgment on qualified immunity grounds, the Sixth Circuit found a clearly established violation of a constitutional right. The court stated that "[a]n

8

officer has used excessive force when he pepper sprays a suspect who has not been told she is under arrest and is not resisting arrest," noting that "even when a suspect verbally and physically resists arrest, the use of pepper spray may constitute excessive force." *Id*. at 311. The Sixth Circuit confirmed that this was the "general consensus" among its caselaw. *Id*. at 314.

When the Court applies this "general consensus" to the facts taken in a light most favorable to Dees, it's not a close call. As Dees tells it, he was doing nothing more than standing on a public sidewalk when he was pepper sprayed by Davis. He was not actively or passively resisting. He had not disregarded an order from the officers. He was not under arrest. He was not threatening Davis or the other officers. On these facts, the Court finds a violation of a clearly established right. Davis is not entitled to summary judgment.

The Court concedes that Davis tells a different story. But Dees' story is the one the Court must accept at this point. Summary judgment on the excessive force claim must be denied.[7]

### C.    *Defendants have Failed to Develop a Cogent Argument on Plaintiff's* **Monell** *Claim*

Plaintiff next asserts that Davis' use of excessive force was caused by the FWPD's use-of-force policy. He reasons that pepper spray is too far down the scale, allowing officers to use pepper spray in response to levels of resistance incompatible with federal law. Thus, he claims the City of Fort Wayne is liable under *Monell*.[8]

Under § 1983, a municipality or other local governmental entity may not be held liable for an officer's unconstitutional acts "*solely* . . . on a respondeat superior theory." *Monell*, 436 U.S. at 691 (emphasis in original). Instead, a municipality may be liable under § 1983 "when execution of a government's policy or custom . . . inflicts the injury" the plaintiff suffered. *Id*. at 694. *Monell*

---

[7] If Davis wants to raise qualified immunity again at trial, he will need to tender special interrogatories to allow the jury to make the required factual findings. *See Warlick v. Cross*, 969 F.2d 303, 305-06 (7th Cir. 1992).
[8] Plaintiff agrees that summary judgment is properly entered on his *Monell* claim related to his arrest.

liability extends to any "official policy, widespread custom, or action by an official with policy-making authority" that "was the 'moving force' behind his constitutional injury." *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

Other than citation to blackletter law, Defendants' entire argument related to the *Monell* claim is the following sentence from their initial summary judgment brief:

> Dees cannot show a policy or custom that was the moving force behind the use of force by Davis, the execution of the probable cause affidavit by Rommel, or for that matter the ultimate arrest by Gerardot the next day.

(ECF No. 24 at 19). Defendants do not even reference the *Monell* claim in their reply.

"Perfunctory or undeveloped arguments are waived." *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017). Defendants' one-sentence argument, simply denying the existence of a *Monell* claim, is one of those waived arguments. This is particularly true when, like this case, Plaintiff designates the use-of-force policy that appears to facially violate federal law when the facts are taken in a light most favorable to Dees. If the use-of-force policy permits the use of pepper spray in the event of verbal non-compliance and passive resistance, and if Davis followed that policy in pepper spraying a passive Dees, then a jury could conclude that *Monell* liability exists. Defendants' motion for summary judgment on the *Monell* claim is denied.

**D.**     ***Rommel is Entitled to Qualified Immunity***

Finally, Dees presents a false arrest claim. He argues that Rommel's probable cause affidavit, describing the June 15 incident, violates *Franks v. Delaware*, 438 U.S. 154 (1978), in that it contains what he claims are false statements. Dees points specifically to Rommel's use of the first person when describing events he did not witness, and the description of the event generally.

The warrant-issuing magistrate's probable-cause determination assumes a truthful showing of the facts sworn to in the warrant affidavit. *Franks*, 438 U.S. at 164–65 (1978). "The requirement that a warrant not issue 'but upon probable cause, supported by oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause." *Id*. at 168. A warrant procured by lies or with reckless disregard for the truth is void. *Id*. at 427. The affiant officer for such a warrant faces § 1983 liability. *Taylor v. Hughes*, 26 F.4th 419, 419 (7th Cir. 2022). "To earn a trial on such a claim, a § 1983 plaintiff must bring forth enough evidence to permit a reasonable jury to conclude that the defendant officer made intentional or reckless misrepresentations of fact that were necessary to the finding of probable cause." *Id*.

The general description first. The thrust of Dees' argument is that, because the probable cause affidavit contains only the officers' version of the June 15 incident and not his, it is false. The Court cannot agree.

In false-arrest cases, qualified immunity provides officers with an extra layer of protection, because even if a jury can find lack of probable cause on a given set of facts, the question still is whether a reasonable officer would have mistakenly believed that the arrest lacked probable cause. *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001). If an officer had even "arguable probable cause" to arrest the plaintiff, then qualified immunity applies. *Id.* While Dees disagrees with the version of events in the probable cause affidavit, he submits no evidence that the version is an "intentional or reckless misrepresentation." Without such a showing, he cannot show the violation of a clearly established right.

Rommel's signature on Brooks affidavit is a different matter. The probable cause affidavit *is* a lie. Rommel did not witness the things in the affidavit, nor did he know about them. Rommel,

11

then, likely did violate *Franks* when he swore he saw things and knew things he undisputedly did not.

That said, the Court cannot find that the right Dees seeks to vindicate was clearly established under the facts presented. First, Plaintiff has failed to cite to any caselaw that could establish such a right. His only case cite, *Starks v. Moore*, 51 F. Supp. 3d 782 (S.D. Ind. 2014), is a district court case. As discussed above, district court decisions cannot clearly establish law. *Anderson*, 72 F.3d at 525. Dees, then, has failed to carry his burden.

And the Court's independent research will not save Dees this time. The Court cannot locate any case, from any jurisdiction, that imposes civil liability on an officer who signs an affidavit prepared by someone else under similar facts. The Court's research instead reveals the opposite. *See Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 362-63 (M.D. La. 2022) (finding qualified immunity where officers executed probable cause affidavits without specific knowledge of the underlying crime, but where they were aware of surrounding protests and relied on information from other officers).

This is not to say the Court endorses what happened here. Rommel, the prosecutors, and the FWPD took unnecessary shortcuts that technically violated Dees constitutional rights. That the Court doesn't find that violation actionable should not diminish the gravity of the misconduct. That said, Dees has not persuaded the Court that he is entitled to a trial on his false arrest claim, so summary judgment will be entered.

### III. Conclusion

For these reasons, Defendants' motion for summary judgment (ECF No. 23) is GRANTED in part and DENIED in part. The motion is GRANTED on Counts II, III, V, VI, and VII of Plaintiff's complaint. The motion is DENIED in all other respects.

SO ORDERED on March 6, 2024.

                s/ *Holly A. Brady*
                CHIEF JUDGE HOLLY A. BRADY
                UNITED STATES DISTRICT COURT